SCOTT W. JOHNSON
JOHNSON & ORR, P.S.
1038 JADWIN AVE.
RICHLAND, WA  99352
 (509) 579-0080
scott@johnsonorr.com

Attorney for Defendant
BRAULIO JIMENEZ

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATE OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BRAULIO JIMENEZ,<br><br>    Defendant. | NO. 4:18-cr-06008-EFS<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

Defendant, BRAULIO JIMENEZ, by and through Scott W. Johnson, attorney for the defendant, submits the following sentencing memorandum:

## I.
## Status of the Case

On February 15, 2018, a criminal complaint (ECF 1) was filed in U.S. District Court for the Eastern District of Washington, charging Mr. Jimenez with:

1. Count 1: Conspiracy to Possess with the Intent to Distribute and Distribution of 50 Grams or More of Actual Methamphetamine and 5

Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846;

2. Count 2: Possession with Intent to Distribute 50 Grams or More of Actual Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

On February 15, 2018, Mr. Jimenez appeared before a Magistrate Dimke for an initial appearance. Mr. Jimenez entered a not guilty plea. (ECF 14).

On February 21, 2018, an indictment (ECF 52) was filed in U.S. District Court for the Eastern District of Washington charging Mr. Jimenez with:

1. Count 1: Conspiracy to Distribute 50 Grams or More of Actual Methamphetamine, 5 Kilograms or More of Cocaine, and 1 Kilogram or More of Heroin in violation of 21 U.S.C. § 846.

2. Counts 3 and 4: Money Laundering;

3. Count 5: Possession with Intent to Distribute 50 Grams or More of Actual Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)

4. Count 6: Possession with Intent to Distribute 1 Kilogram or More of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B);

5. Count 7: Possession with Intent to Distribute 5 Kilograms or More of a Mixture or Substance Containing Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)

On March 1, 2018, Mr. Jimenez appeared before Magistrate Dimke for an arraignment. Mr. Jimenez pled not guilty. (ECF 75).

On June 19, 2018, a superseding indictment (ECF 98) was filed in U.S. District Court for the Eastern District of Washington, charging Mr. Jimenez with:

1. Count 1: Conspiracy to Distribute 50 Grams or More of Actual Methamphetamine, 5 Kilograms or More of Cocaine, and 1 Kilogram or More of Heroin in violation of 21 U.S.C. § 846.

2. Counts 3 and 4: Money Laundering.

3. Count 5: Possession with Intent to Distribute 50 Grams or More of Actual Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B);

4. Count 6: Possession with Intent to Distribute 1 Kilogram or More of Heroin, in violation of 21 841(a)(1) and (b)(1)(B);

5. Count 7: Possession with Intent to Distribute 5 Kilograms or More of a Mixture or Substance Containing Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B);

6. Count 8: Possession with Intent to Distribute 400 Grams or More of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

On June 26, 2018, Mr. Jimenez appeared before Magistrate Dimke for an arraignment. Mr. Jimenez pled not guilty. (ECF 131).

On May 14, 2019, Mr. Jimenez entered a guilty plea (ECF 241) to:

1. Count 1, Conspiracy to Distribute 50 Grams or More of Actual (Pure) Methamphetamine, 5 Kilograms or More of Cocaine and 1 Kilogram or More of Heroin, in violation of 21 U.S.C. § 846(a)(1), (b)(1)(A);

2. Counts 3 and 4, Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B), (a)(3);

3. Count 8, Possession with Intent to Distribute 400 Grams or more of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).

## II.
## Plea Agreement

Mr. Jimenez and the United States entered into a plea agreement. (ECF 243), (hereinafter Plea Agreement). The parties agreed that:

1. The Government agrees, at sentencing, to dismiss:

a. Count 5: Possession with Intent to Distribute 50 Grams or More of Actual Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B);

   b. Count 6: Possession with Intent to Distribute 1 Kilogram or More of Heroin, in violation of 21 841(a)(1) and (b)(1)(B);

   c. Count 7: Possession with Intent to Distribute 5 Kilograms or More of a Mixture or Substance Containing Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (Plea Agreement, pages 21-22).

2. The United States would argue for a 2-level increase for possession of a firearm. Mr. Jimenez was allowed to argue against it. (Plea Agreement, page 23).

3. The United States would argue for a 2-level increase for obstruction of justice. Mr. Jimenez was allowed to argue against it. (Plea Agreement, page 23).

4. Provided that Mr. Jimenez demonstrated acceptance of responsibility, the government would recommend a 2-level reduction in the offense level pursuant to USSG §3E1.1(a). If Mr. Jimenez's offense level is 16 or greater, the government would recommend an additional 1-level

reduction for timeliness pursuant to USSG §3E1.1(b). (Plea Agreement, page 24).

5. The Government will recommend a sentence no greater than 25 years and Mr. Jimenez is free to ask for any lawful sentence. (Plea Agreement, page 25).

6. The parties can recommend any or no fine be imposed in this case. (Plea Agreement, page 25).

7. The parties agreed to recommend the Court impose a 5-year term of supervised release. (Plea Agreement, page 27).

8. Mr. Jimenez agreed to waive his right to appeal his conviction and sentence. In addition, Mr. Jimenez waived his right to file any post-conviction motion, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel. (Plea Agreement, page 28).

## IV.
## Sentencing Guidelines

For counts 1 and 8, Mr. Jimenez has a base offense level of 38. ("PSR", page 11, ¶ 40). The Government and US Probation add 2 points for possession of a firearm. ("PSR", page 11, ¶ 41). Mr. Jimenez objects to that

increase. The Government and US Probation add 2 points for obstruction of justice. ("PSR", page 11, ¶ 44). Mr. Jimenez objects to that increase. Thus, for Counts 1 and 8, the Government and Probation calculate an adjusted offense level at 42. ("PSR", page 11, ¶ 45). Mr. Jimenez calculates an adjusted offense level of 38.

For counts 3 and 4, Mr. Jimenez has a base offense level of 40. ("PSR", page 11, ¶ 47). There is a 2-level increase because the convictions were under 18 U.S.C. 1956. ("PSR", page 11, ¶ 48). The Government and US Probation add 2 points for obstruction of justice. ("PSR", page 11, ¶ 51). Mr. Jimenez objects to that increase. Thus, for Counts 1 and 8, the Government and Probation calculate an adjusted offense level at 44. ("PSR", page 12, ¶ 52). Mr. Jimenez calculates a total adjusted offense level of 42.

Counts 3 and 4 have a higher adjusted offense level than counts 1 and 8. Therefore the greater adjusted offense level is 44 (using the Government and Probation calculation) or 42 (using Mr. Jimenez's calculation). ("PSR", page 12, ¶ 53-54).

Applying the multiple count adjustment under USSG 3D1.4(a), (b), and (c) to the greater adjusted offense level results in a 2-point increase in the multiple count adjustment score. Therefore, the combined adjusted offense

level is 46 (using the Government and Probation calculation) or 44 (using Mr. Jimenez's calculation). ("PSR", page 12, ¶ 55-56).

Finally, Mr. Jimenez is eligible for a 3-level reduction for timely acceptance of responsibility under USSG §3E1.1(a) and (b). ("PSR", page 12, ¶58-59).

Using the Government and Probation calculation, the total offense level is 43 ("PSR", page 12, ¶ 60), with a criminal history category of 1, resulting in a guideline range of life ("PSR", page 18, ¶ 108). Using Mr. Jimenez's calculation, the total offense level is 41, with a criminal history category of 1, resulting in a guideline range of 324-405 months.

## V.
**Objections to Presentence Investigation Report**

Mr. Jimenez objects to "PSR", page 9, ¶ 32 where Probation alleges Mr. Jimenez was attempting to unlawfully influence a co-defendant or witness following his arrest during phone calls from the Yakima County Jail.

USSG §3C1.1 requires he following:
> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a

closely related offense, increase the offense level by 2 levels.

First, Mr. Jimenez was never incarcerated at the Yakima County Jail. Secondly, there is no evidence in the record about what was said during the calls that meets the requirements of USSG §3C1.1.

Mr. Jimenez next objects to "PSR", page 9, ¶ 32 where Probation alleges that a firearm was possessed by Mr. Jimenez under USSG §2D1.1(b)(1). Section 2D1.1(b)(2) of the United States Sentencing Guidelines provides that "[i]f a dangerous weapon (including a firearm) was possessed" during an offense involving drugs, the offense level should be increased by two levels. The commentary to section 2D1.1(b)(2) further notes that the enhancement should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Commentary to U.S.S.G. § 2D1.1(b)(2), n.11.

In Mr. Jimenez's case, other than the firearm being in a toy box in a bedroom in his house, there is no evidence that Mr. Jimenez himself possessed the firearm. In *United States v. Reese,* 775 F.2d 1066 (9th Cir.1985), the court held the evidence insufficient to establish a violation of 18 U.S.C. § 1202(a)(1) (felon in possession of a firearm), holding:

> Although the firearms were discovered at Reese's house, Reese was not the only person residing there at the time the guns were found. Where, as here, a residence is jointly occupied, the mere fact that contraband is

discovered at the residence will not, without more,
provide evidence sufficient to support a conviction based
on constructive possession against any of the occupants.

In Mr. Jimenez's case, the firearm was not registered to him, there is no evidence that his fingerprints or DNA were found on the firearm. There are no statements from Mr. Jimenez, or any other person connected with the case, that the firearm was Mr. Jimenez's firearm.

There is also no evidence that the firearm was connected to the offense. There are no law enforcement reports that Mr. Jimenez carried or used **any** firearm while he was being surveilled in this case. There are no statements from Mr. Jimenez, or any other person connected with the case, that Mr. Jimenez used **any** firearm during the commission of any offense he pled guilty to.

## VI.
## Mr. Jimenez's Recommendation Under 18 U.S.C. §3553

In evaluating 18 U.S.C. §3553, Mr. Jimenez respectfully requests that the court consider the following factors as they apply to him and sentence him to 120 months incarceration.

### A. Circumstances of the Instant Offense

This area has been thoroughly covered in the "PSR" pages 7-9, ¶ 16-29. It is important to note that Mr. Jimenez was only directly connected to two money

drops, one on January 19, 2018 and one on February 2, 2018. ("PSR", pages 7-8, ¶ 20). Further, during the execution of a search warrant on February 14, 2018 at Mr. Jimenez's home, the bulk of contraband (money and drugs) were not found in Mr. Jimenez's bedroom or closet, but instead in another room occupied by a co-defendant. ("PSR", pages 8, ¶22-24).

### B. Mr. Jimenez's History and Characteristics[1]

Mr. Jimenez is a married 24-year-old man. Mr. Jimenez was born in Prosser and moved to the Tri-Cities when he was an infant. Mr. Jimenez had a stable childhood. Mr. Jimenez is the second youngest of 4 children. His parents have been married and together since he was born.

Due to a variety of factors, including drug use, Mr. Jimenez left school in the 10th grade.

Mr. Jimenez married Marisela Mendoza on May 18, 2018. The two have known each other since they were 10 years old. As a result of this case, Mr. Jimenez and Marisela have not been able to have regular contact since February of 2018. Not being able to be with his wife or contact her has been very difficult for Mr. Jimenez.

---

[1] Facts primarily taken from "PSR" ECF 270.

DEFENDANT'S SENTENCING MEMORANDUM                    11

Mr. Jimenez and Marisela have 2 children, Sofia, age 2 and Adilene, age 1. As hard as it has been for Mr. Jimenez to be away from Marisela, it has been much harder for him to be away from his daughters. Mr. Jimenez is aware that he will miss *at least* the next 10 years of their lives because of his actions. Mr. Jimenez's daughters have motivated him to change his thinking and attitude about the future.

Mr. Jimenez has suffered kidney issues while he has been incarcerated. Mr. Jimenez has been treated for the kidney issues, but the issues remain.

While Mr. Jimenez has associated with gang members, he himself is not a member of any gang.

Mr. Jimenez has had a near lifelong struggle with drugs and alcohol starting at around age 12. Mr. Jimenez had very few periods of abstinence from drugs and alcohol from age 12 forward. Mr. Jimenez has used a variety of narcotics but has primarily been addicted marijuana and cocaine. Mr. Jimenez has never been in any type of drug treatment. Mr. Jimenez has been sober since his arrest in this case. The forced sobriety of being incarcerated has been a benefit to Mr. Jimenez. The forced sobriety has allowed Mr. Jimenez to gain valuable insight into his substance abuse and has provided a solid base for him to maintain his sobriety with the help of structured treatment.

Mr. Jimenez has held numerous jobs throughout his life, although none of those jobs materialized into a career.

Mr. Jimenez has very little criminal history. He has misdemeanor convictions for disorderly conduct, driving with a suspended license in the first degree, and racing. In addition, he has several traffic infractions and dismissed misdemeanor cases.

### C. Need For The Sentence To Reflect Seriousness of Offense, Promote Respect For The Law, and To Provide Just Punishment

Conspiracy to Distribute 50 Grams or More of Actual (Pure) Methamphetamine, 5 Kilograms or More of Cocaine and 1 Kilogram or More of Heroin, Money Laundering, and Possession with Intent to Distribute 400 Grams or more of Fentanyl are a serious felony charges and Mr. Jimenez's participation in distributing drugs is also serious. A sentence of 120 months in prison for Mr. Jimenez is not insignificant and reflects the seriousness of the crimes. Given Mr. Jimenez's 18 U.S.C. §3553 factors, a sentence of 120 months incarceration is a just punishment.

### D. Need For The Sentence To Afford Adequate Deterrence To Criminal Conduct

120 months incarceration is both an adequate deterrent to keep Mr. Jimenez from reoffending and also a deterrent to others who may contemplate committing the same crime. While Mr. Jimenez has made the most of his time incarcerated, he has been removed from his wife, children, and family, which has been very difficult for him. Mr. Jimenez feels that he has let his children and other family members down. This case has also forced Mr. Jimenez to mature.

The deep impact that this case has had on Mr. Jimenez already, combined with 120 months of incarceration, will provide a more than adequate deterrence to any future criminal conduct.

### E. Need For The Sentence To Protect The Public

Mr. Jimenez's conduct in this case was damaging to his children, family, the community, and himself. The time Mr. Jimenez has spent in custody along with whatever additional time the Court imposes has and will allow Mr. Jimenez to reflect on how his actions damaged his family and the community. Mr. Jimenez current abstinence from drugs and alcohol for the longest period in his life, since approximately age 12, has allowed him to be clear headed about not wanting to

return to a life of substance abuse and drug dealing. Given his current insight, a sentence of 120 months would adequately protect the community.

### F. Need For The Sentence Imposed To Provide Defendant With Needed Education, Vocational, Medical, or Correctional Needs or Treatment.

As previously outlined, Mr. Jimenez has a significant drug problem. Mr. Jimenez would like to receive substance abuse treatment while incarcerated.

In addition, Mr. Jimenez is dedicated to making his time incarcerated meaningful. To that end, Mr. Jimenez would like complete his GED and enroll in a welding program while at the Bureau of Prisons.

### G. The need to avoid unwarranted sentencing disparities

Currently, there are no other co-defendants who have been sentenced in this case. Marisela Mendoza Jimenez, Mr. Jimenez's wife, is the only other co-defendant who has pled guilty.

In reviewing the following recent sentences for similar charges in the Eastern District of Washington, a sentence of 120 months would appear to avoid unwarranted sentencing disparities:

On July 26, 2019 Taylor Fertig was sentenced by this Court to 120 months incarceration for Conspiracy to Distribute 400 grams or more of Fentanyl. Mr.

Fertig was alleged to have been one of the first major Fentanyl suppliers in the Eastern District. (Exhibit A).

On July 23, 2019 Jose Luis Muniz was sentenced by Judge Nielson to 135 months incarceration for Conspiracy to Distribute 500 or more grams of a mixture and substance containing a detectable amount of methamphetamine and five kilograms of cocaine. Mr. Muniz was alleged to have distributed large quantities of methamphetamine and cocaine. Mr. Muniz is alleged to have managed monthly shipments of narcotics in excess of 100 pounds. (Exhibit B).

On August 1, 2019 David Navarette was sentenced by Judge Suko to 96 months incarceration for Possession with Intent To Distribute Methamphetamine. Mr. Navarette was found with 200 grams methamphetamine hidden in a secret compartment in his vehicle. (Exhibit C).

On August 1, 2019 Hector Medina was sentenced by Judge Mendoza to 15 years for Conspiracy to Distribute Fentanyl Resulting In The Death of Another Person. Mr. Medina was alleged to have been a distributor of Fentanyl laced pills or "Mexis." Mr. Medina was found to be the drug supplier for a man who eventually overdosed and died from taking the "Mexis". (Exhibit D).

On August 2, 2019 Justin Mullenix was sentenced by Judge Rice to 17 years for Conspiracy to Distribute 500 Grams of more of Methamphetamine. Mr.

Mullenix was alleged to have been gang member who was recently released from state prison for Attempted First Degree Assault. The Attempted First Degree Assault conviction was for shooting a person that Mr. Mullenix believed was a police informant. Mr. Mullenix had numerous previous convictions for violent crime and drug dealing. (Exhibit E).

While each case is unique, the above examples of sentences for similar crimes help provide parameters for Mr. Jimenez's sentence. The low end of the above examples was 96 months, the high end was 17 years. A sentence of 120 months would certainly be consistent with the above examples.

## VII. Fines, Restitution, and Probation

### A. Fines

Under the provisions of USSG §5E1.2 (d) (2), in determining the amount of a fine, the Court must consider any evidence presented as to Mr. Jimenez's ability to pay a fine, in light of his earnings capacity and financial resources. The PSR notes that after a review of Mr. Jimenez's income and expenses, he does not have the ability to pay a fine. ("PSR", pages 17-18, ¶ 103- 105).

## B. Restitution

There is no restitution in this matter.

## C. Supervised Release

Mr. Jimenez is requesting 60 months supervised release.

## VIII.
## CONCLUSION

Mr. Jimenez respectfully request this Court to impose a sentence of 120 months of incarceration. The requested sentence is "sufficient, but not greater than necessary" to meet the purposes of punishment for Mr. Jimenez. A 120 month sentence of incarceration will certainly provide Mr. Jimenez with both punishment and deterrence.

I declare under penalty of perjury the forgoing is true and correct.

DATED this 7th day of August, 2019.

                             Respectfully submitted,

                             "s/Scott W. Johnson"
                             SCOTT W. JOHNSON #27839
                             Attorney for BRAULIO JIMENEZ

## CERTIFICATE OF SERVICE

I declare under penalty of perjury under the laws of the State of Washington, that on August 7, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

<u>Stephanie VanMarter, Assistant U.S. Attorney, 920 W. Riverside, Room 300, Spokane, Wa 99201</u>

DATED this 7th day of August, 2019.

<u>"s/Scott W. Johnson"</u>
SCOTT W. JOHNSON, #27839
Attorney for BRAULIO JIMENEZ
JOHNSON & ORR, P.S.
1038 JADWIN AVE.
RICHLAND, WA 99352
(509) 579-0080
scott@johnsonorr.com